[ORAL ARGUMENT NOT YET SCHEDULED]

No. 13-5069

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

FRANCIS A. GILARDI, JR.; PHILIP M. GILARDI; FRESH UNLIMITED, INC.,
d/b/a Freshway Foods; FRESHWAY LOGISTICS, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
KATHLEEN SEBELIUS, in her official capacity as Secretary of Health and Human Services;
UNITED STATES DEPARTMENT OF THE TREASURY; JACOB J. LEW, in his official
capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF LABOR;
SETH D. HARRIS, in his official capacity as Acting Secretary of Labor;

Defendants-Appellees.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA (No. 1:13-CV-00104-EGS) (Hon. Emmet G. Sullivan)

———————————

**BRIEF FOR THE APPELLEES**

———————————

STUART F. DELERY
  *Acting Assistant Attorney General*

RONALD C. MACHEN, JR.
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
ALISA B. KLEIN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

**CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES
PURSUANT TO CIR. R. 28(a)(1)**

**A.    Parties and *Amici***

Plaintiffs-appellants are Francis A. Gilardi, Jr.; Philip M. Gilardi; Fresh Unlimited, Inc., d/b/a Freshway Foods; and Freshway Logistics, Inc.

Defendants-appellees are the United States Department of Health and Human Services; Kathleen Sebelius, in her official capacity as Secretary of Health and Human Services; the United States Department of the Treasury; Jacob J. Lew, in his official capacity as Secretary of the Treasury; the United States Department of Labor; and Seth D. Harris, in his official capacity as Acting Secretary of Labor.

Amicus briefs for appellants have been filed by Liberty, Life, and Law Foundation; Archdiocese of Cincinnati; Association of American Physicians and Surgeons; American Association of Pro-Life Obstetricians and Gynecologists; Christian Medical Association; Catholic Medical Association; National Catholic Bioethics Center; Physicians for Life; National Association of Pro Life Nurses; State of Ohio; Breast Cancer Prevention Institute; Polycarp Research Institute; Abortion Breast Cancer Coalition;  Christian Legal Society; Association of Rescue Gospel Missions; Prison Fellowship Ministries; Association of Christian Schools International; National Association of Evangelicals; Ethics and Religious Liberty Commission of the Southern Baptist Convention; The C12 Group; Institutional

Religious Freedom Alliance; Life Legal Defense Foundation; Nicanor Pier

Austriaco, et al.; and Eagle Forum Education & Legal Defense Fund.

### B.    Ruling Under Review

Plaintiffs have appealed the March 3, 2013 order that denied their motion for

a preliminary injunction.  The order (Docket Entry #33) and accompanying

opinion (Docket Entry #34) were issued by the Honorable Emmett J. Sullivan in

Case No.1:13-CV-00104-EGS (D.D.C.).

### C.    Related Cases

This case was not previously before this Court.  The following appeals in

other circuits present the same issue that is presented in this case:

*Conestoga Wood Specialties Corp. v. Sebelius*, No. 13-1144 (3d Cir.) (oral
argument heard 5/30/13);

*Autocam Corp. v. Sebelius*, No. 12-2673 (6th Cir.) (oral argument set for
6/11/13);

*Legatus v. Sebelius*, No. 13-1092 (6th Cir.);

*Eden Foods v. Sebelius*, No. 13-1677 (6th Cir.);

*Korte v. HHS*, No. 12-3841 (7th Cir.) (argument heard 5/22/13);

*Grote Industries, LLC v. Sebelius*, No. 13-1077 (7th Cir.) (argument heard
5/22/13);

*O'Brien v. HHS*, No. 12-3357 (8th Cir.);

*Annex Medical, Inc. v. Sebelius*, No. 13-1118 (8th Cir.);

*Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-2694 (10th Cir.) (en banc argument heard 5/23/13);

*Newland v. Sebelius*, No. 12-1380 (10th Cir.);

*Armstrong v. Sebelius*, No. 13-1218 (10th Cir.)

In district court, plaintiffs designated this case as related to *Tyndale House Publishers, Inc. v. Sebelius*, Civ. No. 12-1635 (RBW) (D.D.C.), but the *Tyndale* court rejected that designation and ordered that this case be reassigned.  *See* R.22.


    s/  Alisa B. Klein
Alisa B. Klein
Counsel for the Appellees

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

GLOSSARY

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF THE ISSUE ............................................................................. 1

STATUTES AND REGULATIONS ...................................................................... 1

STATEMENT OF THE CASE .............................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

A.    Statutory and Regulatory Background ........................................... 3

B.    Factual Background and District Court Proceedings ..................... 8

SUMMARY OF ARGUMENT ........................................................................... 10

STANDARD OF REVIEW ................................................................................. 15

ARGUMENT ...................................................................................................... 15

A.    RFRA Does Not Allow A For-Profit, Secular Corporation
      To Deny Its Employees Benefits On The Basis Of Religion ...................... 16

B.    The Obligation To Cover Contraceptives Lies With Freshway
      Foods, Not With The Corporations' Shareholders ...................................... 24

C.    Decisions That Employees Make About How To Use Their
      Compensation Cannot Properly Be Attributed To The
      Corporation Or Its Shareholders ................................................................. 32

D.    The Contraceptive-Coverage Requirement Is Narrowly
      Tailored To Advance Compelling Governmental Interests .......................... 38

CONCLUSION ...................................................................................................47

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[1]

**Cases:**                                                                    **Page**

*Autocam Corp. v. Sebelius*,
   2012 WL 6845677 (W.D. Mich. Dec. 24, 2012),
   *appeal pending*, No. 12-2673 (6th Cir.) ......................................... 11, 14, 15, 24,
                                                                                    27, 33, 37, 38

*Braunfeld v. Brown*,
   366 U.S. 599 (1961) ................................................................................29

*Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*,
   862 F.2d 597 (6th Cir. 1988) ...............................................................25

*Catholic Charities of Sacramento, Inc. v. Superior Court*,
   85 P.3d 67 (Cal. 2004)...........................................................................46

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ............................................................... 14, 25, 26

*Chance Management, Inc. v. State of South Dakota*,
   97 F.3d 1107 (8th Cir. 1996) ...............................................................26

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006)..............................................................16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ..............................................................................18

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ..................................................................... 12, 17

*Commack Self-Service Kosher Meats, Inc. v. Hooker*,
   680 F.3d 194 (2d Cir. 2012) .................................................................32

---

[1] Authorities on which we chiefly rely are marked with asterisks.

*Conestoga Wood Specialties Corp. v. Sebelius,*
   __ F. Supp. 2d __, 2013 WL 140110 (E.D. Pa. Jan. 11, 2013),
   *appeal pending*, No. 13-1144 (3d Cir.) ................................................... 11, 27, 38

*Conestoga Wood Specialties Corp. v. Sebelius,*
   No. 13-1144 (3d Cir. Feb. 7, 2013) ............................................................. 35, 37

*\*Corporation of the Presiding Bishop of the Church of Jesus Christ
   of Latter-Day Saints v. Amos,*
   483 U.S. 327 (1987) .................................................. 12, 17, 20, 21, 23

*Cutter v. Wilkinson,*
   544 U.S. 709 (2005) ........................................................................................21

*Diva's Inc. v. City of Bangor,*
   411 F.3d 30 (1st Cir. 2005) ...........................................................................26

*Dole Food Co. v. Patrickson,*
   538 U.S. 468 (2003) .......................................................................................25

*Doremus v. Board of Ed. of Hawthorne,*
   342 U.S. 429 (1952) .......................................................................................36

*EEOC v. Townley Eng'g & Mfg. Co.,*
   859 F.2d 610 (9th Cir. 1988) .........................................................................31

*Eisenstadt v. Baird,*
   405 U.S. 438 (1972) ................................................................................. 39, 40

*Employment Div., Dept. of Human Resources of Ore. v. Smith,*
   494 U.S. 872 (1993) .......................................................................................18

*Erlich v. Glasner,*
   418 F.2d 226 (9th Cir. 1969) .........................................................................26

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
   546 U.S. 418 (2006) .......................................................................................18

*Grote Industries, LLC v. Sebelius*,
  __ F. Supp. 2d __, 2012 WL 6725905 (S.D. Ind. Dec. 27, 2012),
  *appeal pending*, No. 13-1077 (7th Cir.) ..............................................................11

*Grote v. Sebelius*,
  708 F.3d 850 (7th Cir. 2013) .................................................. 15, 24, 28, 33, 35, 36

*The Guides, Ltd. v. Yarmouth Group Property Management, Inc.*,
  295 F.3d 1065 (10th Cir. 2002)..........................................................................26

*Hein v. Freedom from Religion Foundation, Inc.*,
  551 U.S. 587 (2007) ...........................................................................................36

*Hobby Lobby Stores*,
  870 F. Supp. 2d 1278 (W.D. Okla. 2012),
  *appeal pending*, No. 12-6294 (10th Cir.) ......................................... 11, 39, 45, 46

*Hobby Lobby Stores, Inc. v. Sebelius*,
  2012 WL 6930302 (10th Cir. Dec. 20, 2012) ............................................ 16, 37

*\*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  132 S. Ct. 694 (2012).................................................................................. 12, 19

*In re Kaplan*,
  143 F.3d 807 (3d Cir. 1998) ...............................................................................26

*Kennedy v. St. Joseph's Ministries, Inc.*,
  657 F.3d 189 (4th Cir. 2011) ..............................................................................20

*Korte v. HHS*,
  __ F. Supp. 2d __, 2012 WL 6553996 (S.D. Ill. 2012),
  *appeal pending*, No. 12-3841 (7th Cir.) ........................................................ 44, 45

*Kush v. American States Ins. Co.*,
  853 F.2d 1380 (7th Cir. 1988)............................................................................25

*Laskowski v. Spellings*,
  546 F.3d 822 (7th Cir. 2008) ..............................................................................36

*LeBoon v. Lancaster Jewish Community Center Ass'n*,
  503 F.3d 217 (3d Cir. 2007) ................................................................20

*Legatus v. Sebelius*,
  __ F. Supp. 2d __, 2012 WL 5359630 (Oct. 31, 2012),
  *appeal pending*, No. 13-1092 (6th Cir.) ...........................................44

*McClure v. Sports & Health Club, Inc.*,
  370 N.W.2d 844 (Minn. 1985) ...................................................... 31, 32

*Mead v. Holder*,
  766 F. Supp. 2d 16 (D.D.C. 2011),
  *aff'd*, *Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011) .....................39

*Mitchell v. Helms*,
  530 U.S. 793 (2000) ...........................................................................22

*National Wildlife Federation v. Burford*,
  878 F.2d 422 (D.C. Cir. 1989).............................................................31

*In re Navy Chaplaincy*,
  697 F.3d 1171 (D.C. Cir. 2012)..................................................... 15, 16

*NLRB v. Catholic Bishop of Chicago*,
  440 U.S. 490 (1979) ...........................................................................20

*O'Brien v. HHS*,
  894 F. Supp. 2d 1149 (E.D. Mo. 2012),
  *appeal pending*, No. 12-3357 (8th Cir.) ..................................... 11, 15, 37, 45, 46

*Potthoff v. Morin*,
  245 F.3d 710 (8th Cir. 2001) ..............................................................26

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*,
  450 F.3d 1295 (11th Cir. 2006) ..........................................................20

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ...........................................................................40

*Sherbert v. Verner*,
   374 U.S. 398 (1963) ........................................................................18

*Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel*,
   20 F.3d 1311 (4th Cir. 1994) .................................................. 26, 27

*Spencer v. World Vision, Inc.*,
   633 F.3d 723 (9th Cir. 2011) .................................................. 20, 22

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .........................................................31

*Thomas v. Review Board*,
   450 U.S. 707 (1981) ................................................................ 18, 38

*Torco Oil Co. v. Innovative Thermal Corp.*,
   763 F. Supp. 1445 (N.D. Ill. 1991)..................................................28

*Tyndale House Publishers, Inc. v. Sebelius*,
   __ F. Supp. 2d __, 2012 WL 5817323 (D.D.C. Nov. 16, 2012) .........................32

*United States v. Lee*,
   455 U.S. 252 (1982) .......................................................... 29, 30, 44

*University of Great Falls v. NLRB*,
   278 F.3d 1335 (D.C. Cir. 2002)................................................ 13, 22

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ................................................................... 15, 16

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ........................................................................18

*Zelman v. Simmons-Harris*,
   536 U.S. 639 (2002) ........................................................................34

**Statutes:**

1 U.S.C. § 1 ...................................................................................................17

26 U.S.C. § 45R ............................................................................................42

28 U.S.C. § 1292(a)(1) ..................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

29 U.S.C. § 201 et seq ...................................................................................3

29 U.S.C. § 1001 et seq .................................................................................3

29 U.S.C. § 1185d ..........................................................................................5

42 U.S.C. § 300gg-13 ................................................................. 5, 29, 39, 43

42 U.S.C. § 300gg-13(a)(1) ...........................................................................5

42 U.S.C. § 300gg-13(a)(2) ...........................................................................5

42 U.S.C. § 300gg-13(a)(3) ...........................................................................5

42 U.S.C. § 300gg-13(a)(4) ...........................................................................5

42 U.S.C. § 2000e et seq ...........................................................................4, 19

42 U.S.C. § 2000e-1(a) ................................................................................19

42 U.S.C. § 2000bb-1(a) ..............................................................................16

42 U.S.C. § 2000bb-1(b) ........................................................................ 16, 38

42 U.S.C. § 12113(d)(1) ...............................................................................19

42 U.S.C. § 12113(d)(2) ...............................................................................19

42 U.S.C. § 18011 .........................................................................................43

**Regulations:**

45 C.F.R. § 46.202(f) ........................................................................9

45 C.F.R. § 147.130(a)(1)(iv)(B)...................................................7, 44

45 C.F.R. § 147.140(g) ...................................................................43

62 Fed. Reg. 8610 (Feb. 25, 1997) ...................................................9

75 Fed. Reg. 34,538 (June 17, 2010) ...............................................43

77 Fed. Reg. 8725 (Feb. 15, 2012) ...............................................6, 41

78 Fed. Reg. 8456 (Feb. 6, 2013) ......................................... 7, 8, 44, 45

**Legislative Materials:**

139 Cong. Rec. S14350-01 (daily ed. Oct. 26, 1993)...............................38

155 Cong. Rec. S12106-02 (daily ed. Dec. 2, 2009) ............................41

S. Rep. No. 103-111 (1993) ....................................................... 13, 18, 22

# GLOSSARY

| | |
|---|---|
| ADA | Americans with Disabilities Act |
| ERISA | Employee Retirement Income Security Act |
| FDA | Food and Drug Administration |
| FLSA | Fair Labor Standards Act |
| HHS | U.S. Department of Health and Human Services |
| HRSA | Health Resources and Services Administration |
| IOM | Institute of Medicine |
| NLRA | National Labor Relations Act |
| RFRA | Religious Freedom Restoration Act |

## STATEMENT OF JURISDICTION

The district court has jurisdiction under 28 U.S.C. § 1331. The district court denied a preliminary injunction on March 3, 2013. *See* App. 56. Plaintiffs filed a notice of appeal on March 4, 2013. *See* App. 82. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the Religious Freedom Restoration Act ("RFRA") allows a for-profit, secular corporation to deny its employees benefits on the basis of religion.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to appellants' opening brief.

## STATEMENT OF THE CASE

Plaintiff Fresh Unlimited, Inc., d/b/a Freshway Foods, and plaintiff Freshway Logistics, Inc., (collectively, "Freshway Foods") are for-profit corporations that package and distribute fresh produce and other refrigerated products in twenty-three states. The corporations together have nearly 400 full-time employees. People employed by Freshway Foods receive health coverage through the Freshway Foods group health plan, as part of their compensation packages that include wages and non-cash benefits.

The individual plaintiffs ("the Gilardis") are the controlling shareholders of the Freshway Foods corporations.  The Gilardis "hold to the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization."  Pl. Br. 11.  The corporations, however, do not hire employees on the basis of their religion, and the employees thus are not required to share the religious beliefs of the Gilardis.

In this action, the Freshway Foods corporations and the Gilardis contend that, under RFRA, the Freshway Foods group health plan is entitled to an exemption from the federal regulatory requirement that the plan cover Food and Drug Administration ("FDA")-approved contraceptives, as prescribed by a health care provider for the employees of Freshway Foods or their family members.  Plaintiffs contend that this exemption is required by RFRA because the Gilardis have asserted a religious objection to the plan's coverage of contraceptives.[1]

The district court denied plaintiffs' motion for a preliminary injunction, holding that plaintiffs failed to establish a likelihood of success on the merits of their RFRA claim.  *See* App. 57-81.  The court first rejected plaintiffs' contention that it should disregard the corporate form and treat the regulation of the Freshway Foods corporations as if it were the regulation of the Gilardis in their personal

---

[1] The complaint also alleges claims under the First Amendment and Administrative Procedure Act, but plaintiffs relied solely on their RFRA claim in seeking a preliminary injunction.  *See* App. 57-58.

capacities. *See* App. 66-68. Thus, the court separately addressed the RFRA claim asserted by the corporations and the RFRA claim asserted by the Gilardis.

The court rejected the corporations' claim because the Freshway Foods corporations—which are "secular, for-profit corporations that are engaged in the processing, packing, and shipping of produce and other refrigerated products"—are not persons engaged in the exercise of religion with the meaning of RFRA. App. 69. The court rejected the Gilardis' claim because the obligation to provide contraceptive coverage lies with the Freshway Foods corporations, not with the Gilardis in their individual capacities. *See* App. 75-80.

This Court initially denied plaintiffs' motion for an injunction pending appeal. *See* App. 84. On plaintiffs' rehearing petition, the motions panel reconsidered its order and issued an injunction pending appeal. *See* App. 86.

## STATEMENT OF FACTS

### A.    Statutory and Regulatory Background

**1.**  Federal law regulates many aspects of the employer-employee relationship, including wages and non-cash benefits. In addition to regulating wages and overtime pay in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., Congress has regulated employee benefits such as group health plans, pension plans, disability benefits, and life insurance benefits through the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.,

and other statutes.  Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq., an employer cannot discriminate on the basis of religion in setting

the terms or conditions of employment, including employee compensation, unless

the employer qualifies for Title VII's religious exemption.

Congress has long regulated the form of employee compensation that is

provided through employment-based group health plans, which the federal

government subsidizes through favorable tax treatment.  Employees typically do

not pay taxes on their employer's contributions to their health coverage, which are

generally excluded from taxable compensation.  *See* Congressional Budget Office,

*Key Issues in Analyzing Major Health Insurance Proposals* 30 (2008).  These

federal tax subsidies totaled $246 billion in 2007.  *See id*. at 31.  As a result of this

longstanding federal support, employment-based group health plans are by far the

predominant form of private health coverage.  In 2009, employment-based plans

covered about 160 million people.  *See id*. at 4 & Table 1-1.

In 2010, the Patient Protection and Affordable Care Act ("Affordable Care

Act") established certain additional minimum standards for employee group health

plans.  As relevant here, the Affordable Care Act provides that a non-grandfathered

plan must cover certain preventive health services without cost-sharing, that is,

without requiring plan participants and beneficiaries to make co-payments or pay

deductibles.  *See* 42 U.S.C. § 300gg-13.  This provision applies to employment-based group health plans covered by ERISA.  *See* 29 U.S.C. § 1185d.

These preventive health services include immunizations recommended by the Advisory Committee on Immunization Practices, *see id*. § 300gg-13(a)(2); items or services that have an "A" or "B" rating from the U.S. Preventive Services Task Force, *see id*. § 300gg-13(a)(1); preventive care and screenings for infants, children and adolescents as provided in guidelines of the Health Resources and Services Administration ("HRSA"), a component of the Department of Health and Human Services ("HHS"), *see id*. § 300gg-13(a)(3); and certain additional preventive services for women as provided in HRSA guidelines, *see id*. § 300gg-13(a)(4).  The Act thus requires coverage of an array of recommended preventive health services such as immunizations, cholesterol screening, blood pressure screening, mammography, and cervical cancer screening.[2]

2.  When the Affordable Care Act was enacted, there were no existing HRSA guidelines relating to preventive care and screening for women.

---

[2] Coverage is also required for services such as colorectal cancer screening, alcohol misuse counseling, screening for iron deficiency anemia, bacteriuria screening for pregnant women, breastfeeding counseling, screening for sexually transmitted infections, depression screening for adolescents, hearing loss screening for newborns, tobacco use counseling and interventions, and vision screening for young children.  *See generally* http://www.cdc.gov/vaccines/pubs/ACIP-list.htm; http://www.uspreventiveservicestaskforce.org/uspstf/uspsabrecs.htm; http://brightfutures.aap.org/pdfs/Guidelines_PDF/20-Appendices_ PeriodicitySchedule.pdf.

Accordingly, HHS asked the Institute of Medicine ("Institute" or "IOM") to develop recommendations to help the Departments implement this aspect of the preventive health services coverage requirement. *See* Institute of Medicine, *Clinical Preventive Services for Women: Closing the Gaps* 2 (2011) ("IOM Report").[3]

Consistent with the Institute's recommendations, the guidelines developed by HRSA require coverage for annual well-woman visits, screening for gestational diabetes, testing for human papillomavirus, counseling for sexually transmitted infections, HIV counseling and screening, breastfeeding support and supplies, and domestic violence counseling.[4] In addition, the guidelines require coverage for "'[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity,' as prescribed by a provider." 77 Fed. Reg. 8725 (Feb. 15, 2012) (quoting the guidelines). FDA-approved contraceptive methods include oral contraceptive pills, diaphragms, injections and implants, emergency contraceptive drugs, and intrauterine devices.[5]

---

[3] The Institute of Medicine, which was established by the National Academy of Sciences in 1970, is funded by Congress to provide expert advice to the federal government on matters of public health. *See* IOM Report iv.

[4] *See* HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines, *available at* http://www.hrsa.gov/womensguidelines.

[5] *See* Birth Control Guide, FDA Office of Women's Health, *available at*

*Continued on next page.*

The implementing regulations authorize an exemption from the
contraceptive-coverage requirement for the group health plan of any organization
that qualifies as a religious employer.  In their current form, the regulations define
a religious employer as an organization that (1) has the inculcation of religious
values as its purpose; (2) primarily employs persons who share its religious tenets;
(3) primarily serves persons who share its religious tenets; and (4) is a non-profit
organization described in a provision of the Internal Revenue Code that refers to
churches, their integrated auxiliaries, conventions or associations of churches, and
to the exclusively religious activities of any religious order.  *See* 45 C.F.R.
§ 147.130(a)(1)(iv)(B).

The Departments that issued the preventive health services coverage
regulations have proposed an amendment that would simplify the religious
employer exemption by eliminating the first three requirements set out above and
clarify that the exemption is available to all non-profit organizations that fall
within the scope of the relevant Internal Revenue Code provision.  *See* 78 Fed.
Reg. 8456, 8461 (Feb. 6, 2013) (notice of proposed rulemaking).  In addition, the
Departments have set out proposals to accommodate religious objections to the

---

http://www.fda.gov/ForConsumers/ByAudience/ForWomen/FreePublications/ucm
313215.htm.

provision of contraceptive coverage that have been raised by other non-profit, religious organizations.  *See id*. at 8461-62.

The proposed accommodations do not extend to for-profit, secular corporations such as the Freshway Foods corporations.  *See id*. at 8462.  The Departments explained that "[r]eligious accommodations in related areas of federal law, such as the exemption for religious organizations under Title VII of the Civil Rights Act of 1964, are available to nonprofit religious organizations but not to for-profit secular organizations."  *Ibid*.  Consistent with this longstanding federal law, the Departments proposed to limit the definition of organizations eligible for the accommodations "to include nonprofit religious organizations, but not to include for-profit secular organizations."  *Ibid*.

### B.    Factual Background and District Court Proceedings

**1.**  The Freshway Foods companies are for-profit corporations that package and distribute fresh produce and other refrigerated products in twenty-three states.  *See* App. 21 ¶¶ 16, 17.  The corporations together have nearly 400 full-time employees.  *See ibid*.

The Gilardis are two individuals who each hold a 50% interest in the Freshway Foods corporations.  *See* App. 21 ¶ 14.  The Gilardis "believe in the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization."  App. 22 ¶ 26.  The corporations, however, do not

-8-

hire employees on the basis of their religion, and the employees therefore need not share the religious beliefs of the Gilardis.

**2.**  The Freshway Foods group health plan provides health coverage as one of the "non-cash benefits" that full-time employees receive as part of their compensation packages.  App. 24 ¶¶ 29, 31.  The self-insured plan provides employees with health insurance and prescription drug insurance through a third-party administrator and stop loss provider.  *See* App. 24 ¶ 29.

In this suit, plaintiffs contend that RFRA entitles the Freshway Foods group health plan to an exemption from the requirement that the plan cover FDA-approved contraceptives, as prescribed by a health care provider.  Plaintiffs assert that RFRA requires this exemption because the Gilardis have asserted a religious objection to the plan's coverage of contraceptives.  The exemption that plaintiffs seek would encompass all forms of FDA-approved contraceptives, sterilization procedures, and related counseling.  *See* App. 25-26 ¶ 41.[6]

---

[6] Although plaintiffs describe certain forms of FDA-approved contraceptives as "abortifacients," App. 19-20 ¶ 5, these drugs are not abortifacients within the meaning of federal law because they have no effect if a woman is pregnant.  *See* 62 Fed. Reg. 8610, 8611 (Feb. 25, 1997) ("Emergency contraceptive pills are not effective if the woman is pregnant; they act by delaying or inhibiting ovulation, and/or altering tubal transport of sperm and/or ova (thereby inhibiting fertilization), and/or altering the endometrium (thereby inhibiting implantation)."); 45 C.F.R. § 46.202(f) ("Pregnancy encompasses the period of time from implantation until delivery.").

The district court denied plaintiffs' motion for a preliminary injunction, concluding that plaintiffs failed to establish a likelihood of success on the merits of their RFRA claim. *See* App. 57-81. The court first rejected plaintiffs' argument that it should disregard the corporate form and treat the regulation of the Freshway Foods corporations as if it were the regulation of the Gilardis in their personal capacities. *See* App. 66-68. Thus, the court separately addressed the RFRA claim asserted by the corporations and RFRA claim asserted by the Gilardis.

The district court held that the claim asserted by the corporations fails because the Freshway Foods companies—which are "secular, for-profit corporations that are engaged in the processing, packing, and shipping of produce and other refrigerated products"—are not persons engaged in the exercise of religion with the meaning of RFRA. App. 69. The court held that the Gilardis' claim fails because the obligation to provide contraceptive coverage lies with the corporations, not with the Gilardis in their personal capacities. *See* App. 75-80.

## SUMMARY OF ARGUMENT

The Freshway Foods companies are for-profit corporations that package and distribute fresh produce and other refrigerated products. The corporations have nearly 400 full-time employees, who are not hired on the basis of their religion. People employed by Freshway Foods receive health coverage for themselves and

their family members through the Freshway Foods group health plan, as part of their compensation packages that include wages and non-cash benefits.

Plaintiffs contend that the Freshway Foods group health plan must be exempted from the federal requirement to cover FDA-approved contraceptives, as prescribed by a health care provider.  Plaintiffs claim that this exemption is mandated by RFRA because the Gilardis, who are the corporations' controlling shareholders, have asserted a religious objection to the plan's coverage of contraceptives.  Comparable claims have been asserted in other litigation by for-profit corporations engaged in a variety of secular pursuits, such as the manufacture and sale of furniture, automobile parts, vehicle safety systems, mineral and chemical products, and arts and crafts supplies.[7]  The plaintiffs' theory in these cases is that, if a controlling shareholder or officer of a for-profit corporation asserts a religious objection to a law that regulates the corporation, then that law must be subjected to strict scrutiny.  On this reasoning, for-profit

---

[7] *See, e.g.*, *Conestoga Wood Specialties Corp. v. Sebelius*, __ F. Supp. 2d __, 2013 WL 140110 (E.D. Pa. Jan. 11, 2013), *appeal pending*, No. 13-1144 (3d Cir.) (furniture); *Autocam Corp. v. Sebelius*, 2012 WL 6845677 (W.D. Mich. Dec. 24, 2012), *appeal pending*, No. 12-2673 (6th Cir.) (automobile parts); *Grote Industries, LLC v. Sebelius*, __ F. Supp. 2d __, 2012 WL 6725905 (S.D. Ind. Dec. 27, 2012), *appeal pending*, No. 13-1077 (7th Cir.) (vehicle safety systems) *O'Brien v. HHS*, 894 F. Supp. 2d 1149 (E.D. Mo. 2012), *appeal pending*, No. 12-3357 (8th Cir.) (mineral and chemical products); *Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278 (W.D. Okla. 2012), *appeal pending*, No. 12-6294 (10th Cir.) (chain of more than 500 arts and crafts stores).

-11-

corporations would have the "right to ignore anti-discrimination laws, . . . refuse to pay payroll taxes, violate OSHA requirements, etc.," unless these requirements survive strict scrutiny, which is "'the most demanding test known to constitutional law.'"  R.21 at 15, 17 (plaintiffs' motion for a preliminary injunction) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)).

That is not a tenable interpretation of RFRA, which does not apply unless a law substantially burdens a person's exercise of religion.  Plaintiffs rely on the Dictionary Act to argue that a for-profit corporation must be treated as a "person" engaged in the "exercise of religion" within the meaning of RFRA.  But the Dictionary Act recognizes that context matters in statutory interpretation, and no court has ever granted a religious exemption to a for-profit corporation.  In enacting RFRA, Congress carried forward the pre-existing distinction between religious organizations, which can seek religious exemptions from generally applicable laws, and secular corporations, which cannot.  That distinction is rooted in "the text of the First Amendment," *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 706 (2012), and it avoids the Establishment Clause problems that would arise if religious exemptions were extended to entities that operate in the "commercial, profit-making world." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 337 (1987).  Under RFRA, as under pre-existing

federal statutes such as Title VII of the Civil Rights Act of 1964, an entity's for-profit status is an objective criterion that allows courts to distinguish a secular company from a potentially religious organization, without engaging in an intrusive inquiry into the entity's religious beliefs. *See University of Great Falls v. NLRB*, 278 F.3d 1335, 1343-44 (D.C. Cir. 2002). When Congress enacted RFRA, it specified that nothing in the Act should be construed to affect the religious exemption in Title VII. *See* S. Rep. No. 103-111, at 13 (1993).

Plaintiffs cannot circumvent the distinction between religious organizations and secular companies by asserting that the contraceptive-coverage requirement is a substantial burden on the Gilardis' personal religious exercise. The obligation to provide contraceptive coverage lies with the corporations that sponsor a group health plan, not with the Gilardis in their personal capacities. "The Gilardis have chosen to conduct their business through corporations, with their accompanying rights and benefits of limited liability." App. 66. "They cannot simply disregard that same corporate status when it is advantageous to do so." App. 66-67.

Plaintiffs' contrary argument has no discernible limits. On their reasoning, any corporate shareholder (perhaps including a minority shareholder) could object that a corporate regulation requires his "property" to be used "to facilitate" conduct that he personally deems "immoral" and to demand that the corporation be exempted from regulation on that basis. Pl. Br. 40. Likewise, on plaintiffs'

-13-

reasoning, any of the "human beings who may act for" a corporation could object that the measures they take on behalf of the corporation offend their personal religious beliefs.  Pl. Br. 36.  Plaintiffs would elide the distinction between a corporation and its officers and shareholders.  But the Supreme Court has emphasized that "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

Even apart from this central flaw in plaintiffs' argument, their claim fails because an employee's decision to use her health coverage to pay for a particular item or service cannot properly be attributed to her employer, much less to the corporation's shareholders.  Freshway Foods employees are free to use the wages they receive from the corporations to pay for contraceptives.  Plaintiffs do not suggest that these individual decisions by Freshway Foods employees can be attributed to the companies or to the Gilardis.  "Implementing the challenged mandate will keep the locus of decision-making in exactly the same place: namely, with each employee, and not" the corporations or their shareholders.  *Autocam Corp. v. Sebelius*, 2012 WL 6845677, *6 (W.D. Mich. Dec. 24, 2012), *appeal pending*, No. 12-2673 (6th Cir.).  "It will also involve the same economic exchange at the corporate level: employees will earn a wage or benefit with their labor, and

money originating from [Freshway Foods] will pay for it." *Ibid*. "To the extent the [Gilardis] themselves are funding anything at all—and . . . one must disregard the corporate form to say that they are—they are paying for a plan that insures a comprehensive range of medical care that will be used in countless ways" by the participants in the Freshway Foods plan. *Grote v. Sebelius*, 708 F.3d 850, 865 (7th Cir. 2013) (Rovner, J., dissenting). "RFRA does not protect against the slight burden on religious exercise that arises when one's money circuitously flows to support the conduct of other free-exercise-wielding individuals who hold religious beliefs that differ from one's own." *O'Brien v. HHS*, 894 F. Supp. 2d 1149, 1159 (E.D. Mo. 2012), *appeal pending*, No. 12-3357 (8th Cir.).

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for an abuse of discretion and reviews questions of law de novo. *See In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012).

## ARGUMENT

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *In re Navy Chaplaincy*, 697 F.3d at 1178 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008)). "In order to obtain a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely

-15-

to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Ibid.* (quoting *Winter*, 555 U.S. at 20).

Even assuming that the "sliding scale" standard on which plaintiffs rely survives *Winter*, *see* Pl. Br. 19, plaintiffs' failure to establish a likelihood of success on the merits precludes injunctive relief here because their asserted harm (a substantial burden on religious exercise) requires them to demonstrate a likelihood of success on the merits. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006). Moreover, the balance of harms and the public interest preclude injunctive relief because the exemption that plaintiffs seek would come at the expense of the corporations' 400 full-time employees, who would be denied the health coverage to which they are entitled by federal law. *See Hobby Lobby Stores, Inc. v. Sebelius*, 2012 WL 6930302, *2 (10th Cir. Dec. 20, 2012) (relaxed likelihood of success standard is inapplicable because plaintiffs sought "to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme").

## A. RFRA Does Not Allow A For-Profit, Secular Corporation To Deny Its Employees Benefits On The Basis Of Religion.

RFRA provides that the federal government "shall not substantially burden a person's exercise of religion" unless that burden is the least restrictive means to further a compelling governmental interest. 42 U.S.C. § 2000bb-1(a), (b).

-16-

Plaintiffs contend that, by enacting this statute, Congress gave for-profit corporations the "right to ignore anti-discrimination laws, . . . refuse to pay payroll taxes, violate OSHA requirements, etc.," unless these requirements survive strict scrutiny, which, plaintiffs emphasize, is "'the most demanding test known to constitutional law.'" R.21 at 15, 17 (plaintiffs' motion for a preliminary injunction) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)).

Plaintiffs argue that a for-profit corporation must be treated as a "person" engaged in the "exercise of religion" within the meaning of RFRA. For support, plaintiffs rely on the Dictionary Act, which states that, "'[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . "person" . . . include[s] corporations . . . as well as individuals.'" Pl. Br. 45 (quoting 1 U.S.C. § 1). But the context of RFRA makes it abundantly clear that Congress did not give for-profit corporations the right to evade federal regulation in the name of religious freedom. The central purpose of RFRA was to allow natural persons to seek religion-based exemptions from generally applicable laws. Although churches also can seek such exemptions, no court has ever granted a religion-based exemption to an entity that was operating in the "commercial, profit-making world." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 339 (1987).

-17-

RFRA was enacted to restore the Supreme Court's free exercise jurisprudence that pre-dated the decision *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1993). Under the pre-*Smith* case law, natural persons could seek religion-based exemptions from generally applicable regulations. The two cases cited in RFRA itself—*Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)—are illustrative. In *Sherbert*, the Court held that a state government could not deny unemployment compensation to an individual who lost her job because her religious beliefs prevented her from working on a Saturday. And, in *Yoder*, the Court held that a state government could not compel Amish parents to send their children to high school. *See also Thomas v. Review Board*, 450 U.S. 707 (1981) (applying *Sherbert*'s reasoning to hold that a state government could not deny unemployment compensation to an individual who lost his job because of his religious beliefs); S. Rep. No. 103-111, at 8 (1993) (noting the concern that, in the aftermath of *Smith*, "Jews have been subjected to autopsies in violation of their families' faith").

Churches also have been permitted to assert free exercise claims. *See*, *e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). As particularly relevant here, the First Amendment gives churches a limited right to invoke religion to deny their employees the benefits and protections of federal

law. "Since the passage of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.,* and other employment discrimination laws, the Courts of Appeals

have uniformly recognized the existence of a 'ministerial exception,' grounded in

the First Amendment, that precludes application of such legislation to claims

concerning the employment relationship between a religious institution and its

ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S.

Ct. 694, 705 (2012). This "ministerial exception" does not extend to lay

employees, however. "The exception instead ensures that the authority to select

and control who will minister to the faithful—a matter 'strictly ecclesiastical,'—is

the church's alone." *Id*. at 709 (citation omitted).

Congress has authorized religious exemptions in statutes that regulate the

employment relationship, but these religious exemptions never have been extended

to for-profit corporations. In Title VII, Congress exempted "a religious

corporation, association, educational institution, or society" from the prohibition

on religious discrimination in the terms or conditions of employment. 42 U.S.C.

§ 2000e-1(a). Similarly, the Americans with Disabilities Act ("ADA"), which

prohibits employment discrimination on the basis of disability, includes specific

exemptions for religious organizations. *See* 42 U.S.C. § 12113(d)(1), (2);

*Hosanna-Tabor*, 132 S. Ct. at 701 n.1 (discussing the ADA exemptions). And the

National Labor Relations Act ("NLRA"), which gives employees collective

-19-

bargaining and other rights against their employers, has been interpreted to exempt church-operated educational institutions from the jurisdiction of the National Labor Relations Board. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979).

The organizations found to qualify for these religious exemptions all have been non-profit, religious organizations, as in *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 339 (1987). There, the Supreme Court held that Title VII's religious employer exemption allowed the Mormon Church to discharge a building engineer who failed to observe the Church's standards in such matters as church attendance, tithing, and abstinence from coffee, tea, and alcohol. *See id*. at 330 & n.4.[8]

The Supreme Court in *Amos* rejected the claim that Title VII's religious employer exemption impermissibly advances religion in violation of the Establishment Clause. The Court recognized that, "[a]t some point, accommodation may devolve into an unlawful fostering of religion," but concluded that *Amos* was not such a case. *Id*. at 335-336 (quotation marks and citation

---

[8] *See also, e.g., LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 221 (3d Cir. 2007) (non-profit Jewish community center); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 190 (4th Cir. 2011) (non-profit nursing-care facility run by an order of the Roman Catholic Church); *Spencer v. World Vision, Inc.*, 633 F.3d 723, 724-725 (9th Cir. 2011) (per curiam) (non-profit Christian humanitarian organization); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1300 (11th Cir. 2006) (non-profit Hispanic Baptist congregation affiliated with the Southern Baptist Convention).

omitted). The Court emphasized that the case involved only nonprofit activity. *See id*. at 337. Thus, the case did not implicate the concern that "sustaining the exemption would permit churches with financial resources impermissibly to extend their influence and propagate their faith by entering the commercial, profit-making world." *Ibid*. The concurring opinions in *Amos* likewise emphasized that only nonprofit activity was at issue.[9] The Supreme Court subsequently reiterated that the Establishment Clause permits the federal government to "exempt secular nonprofit activities of religious organizations from Title VII's prohibition on religious discrimination in employment." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) (citing *Amos*, 483 U.S. at 329-330).

No court has ever extended the religious exemptions in Title VII, the NLRA, the ADA, or any other federal statute to an entity that is operating in the "commercial, profit-making world." *Amos*, 483 U.S. at 337. This Court has explained that an entity's non-profit status is an objective criterion that allows courts to distinguish potentially religious organizations from secular companies,

---

[9] *See Amos*, 483 U.S. at 341 (Brennan, J., concurring, joined by Marshall, J.) ("I write separately to emphasize that my concurrence in the judgment rests on the fact that these cases involve a challenge to the application of § 702's categorical exemption to the activities of a *nonprofit* organization."); *id*. at 349 (O'Connor, J., concurring) ("Because there is a probability that a nonprofit activity of a religious organization will itself be involved in the organization's religious mission, in my view the objective observer should perceive the Government action as an accommodation of the exercise of religion rather than as a Government endorsement of religion.").

without "'trolling through a person's or institution's religious beliefs.'" *University of Great Falls v. NLRB*, 278 F.3d 1335, 1341-42 (D.C. Cir. 2002) (quoting *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality opinion)). "As the *Amos* Court noted, it is hard to draw a line between the secular and religious activities of a religious organization." *Id*. at 1344. By contrast, "it is relatively straight-forward to distinguish between a non-profit and a for-profit entity." *Ibid*.; *see also Spencer v. World Vision, Inc.*, 633 F.3d 723, 734 (9th Cir. 2011) (O'Scannlain, J., concurring) (explaining that application of Title VII's religious exemption must "center[] on neutral factors (i.e., whether an entity is a nonprofit and whether it holds itself out as religious)," "[r]ather than forcing courts to 'troll[ ] through the beliefs of [an organization], making determinations about its religious mission'") (quoting *University of Great Falls,* 278 F.3d at 1342).[10]

When Congress enacted RFRA, it specified that nothing in RFRA should be construed to affect Title VII's religious accommodation. *See* S. Rep. No. 103-111, at 13 (1993). As Congress understood, extending religious exemptions to for-profit corporations would impermissibly advance religion to the detriment of the

---

[10] The Ninth Circuit has suggested that even a non-profit religious organization might not qualify for the Title VII religious exemption if it "engage[s] primarily or substantially in the exchange of goods or services for money beyond nominal amounts." *Spencer v. World Vision, Inc.*, 633 F.3d 723, 724 (9th Cir. 2011) (per curiam opinion of Judges O'Scannlain and Kleinfeld).

employees, who are autonomous human beings with rights and religious beliefs of
their own.

Plaintiffs do not contend that the Freshway Foods corporations qualify for
the religious exemptions in Title VII, the ADA, the NLRA, or any other federal
statute that regulates the employment relationship. Likewise, RFRA provides no
basis to exempt these corporations from the regulations that govern health
coverage under the Freshway Foods group health plan, which is a significant
aspect of employee compensation. Under RFRA, as under pre-existing federal
statutes, an entity's for-profit status is an objective criterion that allows courts to
distinguish a secular corporation from a potentially religious organization.

Plaintiffs underscore their misunderstanding of the issue when they note that
Freshway Foods makes contributions to charities and donates a trailer for use in an
annual parish picnic. *See* Pl. Br. 12. Federal law does not prohibit for-profit
corporations from making donations to religious charities. But plaintiffs do not
claim that a for-profit corporation could withhold salary from *an employee* who
declines to tithe, on the theory that paying the employee's salary would facilitate
the employee's immoral conduct. Only a religious organization, like that at issue
in *Amos*, can require its employees to tithe. *See Amos*, 483 U.S. at 330 & n.4.
Freshway Foods is not a religious organization, and it therefore must afford its
secular workforce the employee benefits that are required by federal law.

**B.      The Obligation To Cover Contraceptives Lies With Freshway Foods, Not With The Corporations' Shareholders.**

**1.**  Plaintiffs cannot circumvent the distinction between religious organizations and secular companies by attempting to shift the focus of the RFRA inquiry from Freshway Foods to the Gilardis, who are the corporations' controlling shareholders.  Federal law does not require the Gilardis personally to provide health coverage to Freshway Foods employees, or to satisfy the myriad other requirements that federal law places on Freshway Foods.  These obligations lie with the corporations themselves.  The Gilardis cannot even establish standing to challenge the contraceptive-coverage requirement, much less demonstrate that the requirement may be regarded as a substantial burden on their personal exercise of religion.

The contraceptive-coverage requirement "does not compel the [Gilardis] as individuals to do anything." *Autocam Corp. v. Sebelius*, 2012 WL 6845677, *7 (W.D. Mich. Dec. 24, 2012), *appeal pending*, No. 12-2673 (6th Cir.).  "It is only the legally separate" corporations that have "any obligation under the mandate." *Ibid*.  It is Freshway Foods that acts as the employing party; it is Freshway Foods that sponsors the group health plan for employees and their family members; and "it is that health plan which is now obligated by the Affordable Care Act and resulting regulations to provide contraceptive coverage." *Grote v. Sebelius*, 708 F.3d 850, 857 (7th Cir. 2013) (Rovner, J., dissenting).

-24-

The Supreme Court has emphasized that "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

As *Cedric Kushner* illustrates, that principle applies with equal force when an individual is the corporation's sole shareholder. "Indeed, in one sense the rule may be more rigid in a sole shareholder situation." *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1384 (7th Cir. 1988). If an individual chooses "to operate his business in corporate form," that form gives him "several advantages over operations as an unincorporated sole proprietorship, not the least of which was limitation of liability." *Ibid*. An individual "may not move freely between corporate and individual status to gain the advantages and avoid the disadvantages of the respective forms." *Ibid*.

Accordingly, "the circuits are consistent in holding that 'an action to redress injuries to a corporation . . . cannot be maintained by a stockholder in his own name.'" *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 602-603 (6th Cir. 1988). "The derivative injury rule holds that a shareholder (even

a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation." *In re Kaplan*, 143 F.3d 807, 811-812 (3d Cir. 1998) (Alito, J.). "While this rule, which recognizes that corporations are entities separate from their shareholders in contradistinction with partnerships or other unincorporated associations, is regularly encountered in traditional business litigation, it also has been uniformly applied on the infrequent occasions it has arisen in suits against the state for statutory or constitutional violations." *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994).[11]

Nothing in RFRA altered the bedrock principle that a corporation is "a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Cedric Kushner*, 533 U.S. at 163. Just as the Supreme Court in *Cedric*

---

[11] *See, e.g.*, *Diva's Inc. v. City of Bangor,* 411 F.3d 30, 35, 42 (1st Cir. 2005) (dismissing sole shareholder's First Amendment claim for lack of standing); *Potthoff v. Morin*, 245 F.3d 710, 717-718 (8th Cir. 2001) (same); *The Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1070, 1071-73 (10th Cir. 2002) (race discrimination claim); *Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (Privileges and Immunities Clause claim); *Chance Management, Inc. v. State of South Dakota*, 97 F.3d 1107, 1115 (8th Cir. 1996) (same); *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969) (finding "nothing in the Civil Rights Act" that would permit a plaintiff-stockholder to circumvent the rule that, "even though a stockholder owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual").

*Kushner* interpreted the federal RICO statute to reflect this background tenet of corporate law, RFRA too must be interpreted to reflect the same background principle. "The Gilardis have chosen to conduct their business through corporations, with their accompanying rights and benefits of limited liability." App. 66. "They cannot simply disregard that same corporate status when it is advantageous to do so." App. 66-67.

The fact that Freshway Foods is "a 'subchapter S' corporation is of no matter." *Smith Setzer*, 20 F.3d at 1318. "While an S corporation is treated differently for taxation purposes, it remains a corporation in all other ways, and it and its shareholders are separate entities." *Ibid*. "It would be entirely inconsistent to allow [the Gilardis] to enjoy the benefits of incorporation, while simultaneously piercing the corporate veil for the limited purpose of challenging" the contraceptive-coverage requirement. *Conestoga Wood Specialties Corp. v. Sebelius*, __ F. Supp. 2d __, 2013 WL 140110, *8 (E.D. Pa. Jan. 11, 2013). "The law protects that separation between the corporation and its owners for many worthwhile purposes." *Autocam Corp. v. Sebelius*, 2012 WL 6845677, *7 (W.D. Mich. Dec. 24, 2012). "Neither the law nor equity can ignore the separation when assessing claimed burdens on the individual owners' free exercise of religion caused by requirements imposed on the corporate entities they own." *Ibid*.

-27-

These basic tenets of corporate law forecloses the Gilardis' contention that the regulation of the Freshway Foods group health plan should be regarded as a burden on the Gilardis in their personal capacities.  "The owners of an LLC or corporation, even a closely-held one, have an obligation to respect the corporate form, on pain of losing the benefits of that form should they fail to do so." *Grote*, 708 F.3d at 858 (Rovner, J., dissenting).  The Gilardis "are not at liberty to treat the company's bank accounts as their own; co-mingling personal and corporate funds is a classic sign that a company owner is disregarding the corporate form and treating the business as his alter ego." *Ibid*.  "So long as the business's liabilities are not the [Gilardis'] liabilities—which is the primary and 'invaluable privilege' conferred by the corporate form, *Torco Oil Co. v. Innovative Thermal Corp.*, 763 F. Supp. 1445, 1451 (N.D. Ill. 1991) (Posner, J., sitting by designation)—neither are the business's expenditures the [Gilardis'] own expenditures." *Ibid*.  The obligation to provide health coverage under the Freshway Foods group health plan and the money used to pay for that coverage "belong[] to the company, not to the" Gilardis. *Ibid*.

   **2.**  Plaintiffs miss the point when they declare that the corporations' potential tax liability puts indirect pressure on the Gilardis, as corporate officers, to ensure that the corporations comply with federal law.  *See* Pl. Br. 34.  The corporations are legally required to ensure that the plan covers recommended preventive health

services without cost sharing. *See* 42 U.S.C. § 300gg-13. The officers of the corporations and the third-party administrator of the group health plan may have responsibility to ensure that the corporations comply with this legal requirement, just as they may have responsibility to ensure that the corporations comply with other federal laws. But the responsibility of a corporate agent to ensure that the corporation complies with federal law does not transform a corporate regulation into a burden on the agent's personal religious exercise.

Plaintiffs' contrary position has no discernible limits. On their reasoning, any of the "human beings who may act for" a corporation could object that the measures they take on behalf of the corporation offend their personal religious beliefs, and demand that the corporation be exempted from regulation on that basis. Pl. Br. 36 (quotation marks and citation omitted). Likewise, on plaintiffs' reasoning, any corporate shareholder (perhaps including a minority shareholder) could object that a corporate regulation requires his "property" to be used "to facilitate" conduct that he believes "immoral." Pl. Br. 40 (emphasis omitted). Based on these types of claims, corporate officers and shareholders could demand that corporations be exempted from all manner of federal regulation. As the Supreme Court has observed, "'we are a cosmopolitan nation made up of people of almost every conceivable religious preference.'" *United States v. Lee*, 455 U.S. 252, 259 (1982) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 606 (1961)).

-29-

Plaintiffs' position thus would extend to for-profit corporations the prerogatives that otherwise have been granted to religious organizations alone, and it would raise the Establishment Clause concerns that underlie the distinction between for-profit corporations and religious organizations.

That is not a tenable interpretation of RFRA. None of the Supreme Court cases that formed the backdrop to RFRA held or remotely suggested that the regulation of a corporation could be deemed a substantial burden on the personal religious beliefs of a corporate officer or shareholder. Plaintiffs rely on *United States v. Lee*, 455 U.S. 252 (1982), *see* Pl. Br. 37-38, but *Lee* considered a free exercise claim raised by an individual Amish employer—not by a corporation or its officer or shareholder. Moreover, even with respect to the individual employer, *Lee* rejected the free exercise claim. The Supreme Court emphasized that, "[w]hen followers of a particular sect enter into commercial activities as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity." *Lee*, 455 U.S. at 261. The Court explained that "[g]ranting an exemption from social security taxes to an employer operates to impose the employer's religious faith on the employees," *ibid.*, who would be denied their social security benefits if the employer did not pay the social security taxes.

Plaintiffs are also mistaken to rely on the Ninth Circuit's analysis of standing in *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 620 n.15 (9th Cir. 1988); and *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119-20 & n.9 (9th Cir. 2009). There, the Ninth Circuit ruled that for-profit corporations had standing to assert free exercise claims on behalf of their shareholders, and then proceeded to reject those claims on the merits. In addressing standing, the court opined that a closely held corporation "is merely the instrument through and by which" the shareholders "express their religious beliefs," and that the corporation "presents no rights of its own different from or greater than its owners' rights." *Townley*, 859 F.2d at 619-620. That reasoning contradicts the settled tenets of corporate law discussed above, which the Ninth Circuit did not address. In any event, the issue of standing to raise a free exercise claim is a distinct from the question whether a plaintiff has established a prima facie case under RFRA. For standing purposes, an "injury need not be important or large; an 'identifiable trifle' can meet the constitutional minimum." *National Wildlife Federation v. Burford*, 878 F.2d 422, 430 (D.C. Cir. 1989) (citation omitted). RFRA, by contrast, requires a plaintiff to show that a regulation substantially burdens a person's exercise of religion.

Plaintiffs also rely on *McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844 (Minn. 1985), but, there, a state hearing examiner "pierced the 'corporate veil'" to make the individual owners of the stock and assets of a corporation "liable

-31-

for the illegal actions of" the corporation. *McClure*, 370 N.W.2d at 850-51 & n.12.

Moreover, the *McClure* court rejected the free exercise claim because the corporate

plaintiff was "not a religious corporation—it is a Minnesota business corporation

engaged in business for profit." *Id*. at 853.[12]

### C.   Decisions That Employees Make About How To Use Their Compensation Cannot Properly Be Attributed To The Corporation Or Its Shareholders.

For the reasons discussed above, plaintiffs' attempt to conflate the Freshway

Foods corporations with the shareholders cannot salvage their RFRA claim.  Even

apart from this central flaw in plaintiffs' argument, their claim fails because an

employee's decision to use her health coverage for a particular item or service

cannot properly be attributed to her employer, much less to the corporations'

shareholders.

Freshway Foods employees are free to use the wages they receive from the

corporation to pay for contraceptives.  Plaintiffs do not suggest that these

individual decisions by Freshway Foods employees can be attributed to the

---

[12] Other cases cited by plaintiffs are inapposite. *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194 (2d Cir. 2012), rejected a free exercise challenge to a state law that regulated kosher food labels.  In *Tyndale House Publishers, Inc. v. Sebelius*, __ F. Supp. 2d __, 2012 WL 5817323, *6-7 & n.10 (D.D.C. Nov. 16, 2012), the court relied on the "unique corporate structure" of the plaintiff, which was 96.5% owned by a non-profit, religious organization. Plaintiffs designated this case as related to *Tyndale*, *see* R.4, but the *Tyndale* court rejected that designation and ordered that this case be reassigned.  *See* R.22.

corporation or to its shareholders. "Implementing the challenged mandate will keep the locus of decision-making in exactly the same place: namely, with each employee, and not" the corporation or its shareholders. *Autocam Corp.*, 2012 WL 6845677, *6. "It will also involve the same economic exchange at the corporate level: employees will earn a wage or benefit with their labor, and money originating from [Freshway Foods] will pay for it." *Ibid*.

A group health plan "covers many medical services, not just contraception." *Grote v. Sebelius*, 708 F.3d 850, 865 (2013) (Rovner, J., dissenting). "To the extent the [Gilardis'] are funding anything at all—and . . . one must disregard the corporate form to say that they are—they are paying for a plan that insures a comprehensive range of medical care that will be used in countless ways" by the employees of Freshway Foods and their family members. *Ibid*. The decision as to what specific "services will be used is left to the employee and her doctor." *Ibid*. "No individual decision by an employee and her physician—be it to use contraception, treat an infection, or have a hip replaced—is in any meaningful sense the [Gilardis'] decision or action." *Ibid*.

Plaintiffs' contrary position is at odds with the analysis used by the Supreme Court in other First Amendment contexts. In analyzing Establishment Clause challenges, for example, the Supreme Court has recognized that a state does not, by providing a source of funding, necessarily become responsible for an

-33-

individual's decisions in using those funds. In *Zelman v. Simmons–Harris,* 536
U.S. 639 (2002), for instance, the Court rejected an Establishment Clause
challenge to a state school voucher program. Of the more than 3,700 students who
participated in the program during one school year, 96% of them used the vouchers
to enroll at religiously affiliated schools. *See id.* at 647. Nonetheless, the Supreme
Court held that the flow of voucher funds to religiously affiliated schools was not
properly attributable to the State. The Court reasoned that "[t]he incidental
advancement of a religious mission, or the perceived endorsement of a religious
message, is reasonably attributable to the individual recipient, not to the
government, whose role ends with the disbursement of benefits." *Id.* at 652. And
it explained that "no reasonable observer would think a neutral program of private
choice, where state aid reaches religious schools solely as a result of the numerous
independent decisions of private individuals, carries with it the imprimatur of
government endorsement." *Id.* at 655.

It would be equally inappropriate to attribute an employee's decision to use
her comprehensive health coverage for a particular item or service to the employer
that pays for or contributes to the plan. An "employer, by virtue of paying
(whether in part or in whole) for an employee's health care, does not become a
party to the employee's health care decisions: the employer acquires no right to
intrude upon the employee's relationship with her physician and participate in her

medical decisions, nor, conversely, does it incur responsibility for the quality and results of an employee's health care if it is not actually delivering that care to the employee." *Grote*, 708 F.3d at 865 (Rovner, J., dissenting). Indeed, "the Privacy Rule incorporated into the regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") imposes a wall of confidentiality between an employee's health care decisions (and the plan's financial support for those decisions) and the employer." *Id*. at 858.

The connection between an employee's medical decisions and the corporation's shareholders is even more attenuated than the connection between an employee's medical decisions and the corporation. The Gilardis are, "'in both law and fact, separated by multiple steps from both the coverage that the company health plan provides and from the decisions that individual employees make in consultation with their physicians as to what covered services they will use.'" *Conestoga Wood Specialties Corp. v. Sebelius*, No. 13-1144, slip op. 3 (3d Cir. Feb. 7, 2013) (Garth, J., concurring) (quoting *Grote*, 708 F.3d at 858 (Rovner, J., dissenting)). To hold that "a company shareholder's religious beliefs and practices are implicated by the autonomous health care decisions of company employees, such that the obligation to insure those decisions, when objected to by a shareholder, represents a substantial burden on that shareholder's religious liberties" would be "an unusually expansive understanding of what acts in the

commercial sphere meaningfully interfere with an individual's religious beliefs and practices." *Grote*, 708 F.3d at 866.

The religious objection that plaintiffs assert here closely resembles the religious objection that the Supreme Court has found to be non-cognizable in the taxpayer standing context.  In *Doremus v. Board of Ed. of Hawthorne*, 342 U.S. 429 (1952), the Supreme Court explained that "'the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure.'"  *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 600 (2007) (plurality op.) (quoting *Doremus*, 342 U.S. at 433).  The *Doremus* Court "therefore rejected a state taxpayer's claim of standing to challenge a state law authorizing public school teachers to read from the Bible because 'the grievance which [the plaintiff] sought to litigate ... is not a direct dollars-and-cents injury but is a religious difference.'"  *Id*. at 600-601 (quoting *Doremus*, 342 U.S. at 434); *see also id*. at 609-610 (there is "no taxpayer standing to sue under Free Exercise Clause").[13]

---

[13] "Justice Alito's plurality opinion in *Hein* 'is controlling because it expresses the narrowest position taken by the Justices who concurred in the judgment.'"  *Laskowski v. Spellings*, 546 F.3d 822, 827 (7th Cir. 2008) (citations omitted).

Here, too, the connection between an employer's contributions to a comprehensive insurance policy and the decisions that employees make about how to use that comprehensive coverage is too attenuated to establish a cognizable burden on the employer's exercise of religion, much less to demonstrate that the putative burden is substantial. "RFRA does not protect against the slight burden on religious exercise that arises when one's money circuitously flows to support the conduct of other free-exercise-wielding individuals who hold religious beliefs that differ from one's own." *O'Brien v. HHS*, 894 F. Supp. 2d 1149, 1159 (E.D. Mo. 2012); *see also Conestoga Wood Specialties Corp. v. Sebelius*, No. 13-1144, slip op. 4 (3d Cir. Feb. 7, 2013) (citing *Hobby Lobby Stores, Inc. v. Sebelius*, 2012 WL 6930302, at \*3 (10th Cir. Dec. 20, 2012) (RFRA does not "encompass the independent conduct of third parties with whom the plaintiffs have only a commercial relationship")).

Plaintiffs never come to grips with the troubling implications of their argument. *Autocam Corp.*, 2012 WL 6845677, \*7. "Plaintiffs argue, in essence, that the Court cannot look beyond their sincerely held assertion of a religiously based objection to the mandate to assess whether it actually functions as a substantial burden on the exercise of religion." *Ibid.* "But if accepted, this theory would mean that every government regulation could be subject to the compelling interest and narrowest possible means test of RFRA based simply on an asserted

-37-

religious basis for objection." *Ibid*. "This would subject virtually every government action to a potential private veto based on a person's ability to articulate a sincerely held objection tied in some rational way to a particular religious belief." *Ibid*.

Although "'courts are not the arbiters of scriptural interpretation, *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981), the RFRA still requires the court to determine whether the burden imposes on a plaintiff's stated religious beliefs is 'substantial.'" *Conestoga Wood Specialties Corp. v. Sebelius*, __ F. Supp. 2d __, 2013 WL 140110, *10 (E.D. Pa. Jan. 11, 2013). Otherwise, "the standard expressed by Congress under the RFRA would convert to an 'any burden' standard." *Id*. at *13. Congress, however, amended the initial version of RFRA to add the word "substantially," and thus made clear that "any burden" would not suffice. *See* 139 Cong. Rec. S14350-01, S14352 (daily ed. Oct. 26, 1993) (statement of Sen. Kennedy & text of Amendment No. 1082). Here, as in *Doremus*, any burden on religious exercise is too attenuated to be substantial.

### D.    The Contraceptive-Coverage Requirement Is Narrowly Tailored To Advance Compelling Governmental Interests.

Because plaintiffs cannot establish a prima facie case under RFRA, there is no reason to consider whether the contraceptive-coverage requirement is the least restrictive means to advance compelling governmental interests. *See* 42 U.S.C. § 2000bb-1(b). In any event, plaintiffs' argument fails on this secondary inquiry as

-38-

well, because the contraceptive-coverage requirement is narrowly tailored to advance compelling interests in public health and gender equality. The particular health services at issue here relate to an interest that is so compelling as to be constitutionally protected from state interference. *See Hobby Lobby Stores*, 870 F. Supp. 2d at 1296. It is difficult to imagine an interest that is more compelling for a woman than her "decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972).

**1.** "[T]he Government clearly has a compelling interest in safeguarding the public health by regulating the health care and insurance markets." *Mead v. Holder*, 766 F. Supp. 2d 16, 43 (D.D.C. 2011), *aff'd*, *Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011). The Affordable Care Act increases access to recommended preventive health services by requiring that these services be covered without cost sharing, that is, without requiring plan participants and beneficiaries to make co-payments or pay deductibles. *See* 42 U.S.C. § 300gg-13.

Even small increments in cost sharing have been shown to reduce the use of recommended preventive health services. *See* IOM Report 108-109. "Cost barriers to use of the most effective contraceptive methods are important because long-acting, reversible contraceptive methods and sterilization have high up-front costs." *Id*. at 108. "A recent study conducted by Kaiser Permanente found that when out-of-pocket costs for contraceptives were eliminated or reduced, women

-39-

were more likely to rely on more effective long-acting contraceptive methods." *Id.*

at 109.

In addition to protecting a woman's compelling interest in autonomy over

her procreation, *see Eisenstadt*, 405 U.S. at 453, access to contraceptives is a

crucial public health protection because an unintended pregnancy can have major

negative health consequences for both the woman and the developing fetus.  The

Institute of Medicine described the harms to the woman and fetus that can occur

when pregnancies are unintended.  *See* IOM Report 103.  For example, short

intervals between pregnancies are associated with low birth weight and

prematurity.  *See ibid.*  When a pregnancy is unintended, a woman may delay

prenatal care or prolong behaviors that present risks for the developing fetus.  *See*

*ibid.*  And, for women with certain medical conditions (such as diabetes),

pregnancy can pose serious health risks.  *See id.* at 103-104.

The requirement to cover women's recommended preventive health services

without cost sharing also protects the distinct compelling interest in gender

equality.  The Supreme Court has recognized the "importance, both to the

individual and to society, of removing the barriers to economic advancement and

political and social integration that have historically plagued certain disadvantaged

groups, including women."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984).

"Assuring women equal access to . . . goods, privileges, and advantages clearly

furthers compelling state interests." *Ibid*. In enacting the Affordable Care Act's preventive health services coverage requirement, Congress found that "women have different health needs than men, and these needs often generate additional costs." 155 Cong. Rec. S12106-02, S12114 (daily ed. Dec. 2, 2009) (Sen. Feinstein). "Women of childbearing age spend 68 percent more in out-of-pocket health care costs than men." *Ibid*. And this disproportionate burden on women creates "financial barriers . . . that prevent women from achieving health and well-being for themselves and their families." IOM Report 20. The women's preventive health services coverage requirement is designed to equalize preventive health services coverage for women and men, through, among other things, increased access to family planning services for women. *See, e.g.*, 155 Cong. Rec. at S12114 (Sen. Feinstein); *see also* 77 Fed. Reg. at 8728.

**2.** There is no doubt that the exemption that plaintiffs demand here would undermine Congress's objectives. Whereas Congress sought to increase access to women's recommended preventive health services by requiring that these services be covered without cost sharing, plaintiffs seek to exclude coverage of contraceptives entirely from the Freshway Foods plan. Thus, plaintiffs would require that Freshway Foods employees pay for contraceptives with their wages rather than with the health coverage that they earn as an employee benefit.

Plaintiffs do not explain what legal principle requires that Freshway Foods employees pay for contraceptives by using their cash compensation rather than their non-cash health coverage benefits. Plaintiffs' demand to exclude coverage of contraceptives from the Freshway Foods plan would protect no one's religious practices and would impose a wholly unwarranted burden on individual employees and their family members.

Plaintiffs assert that the exemption they demand would not undermine the government's compelling interests because plans that collectively cover millions of employees are not subject to the statutory requirement to cover recommended preventive health services without cost sharing. Contrary to plaintiffs' contention (Pl. Br. 56-57), plans offered by small employers are not exempt from that requirement. Small businesses that elect to offer non-grandfathered health coverage to their employees are required to provide coverage for recommended preventive health services without cost sharing. *See* 42 U.S.C. § 300gg-13. Moreover, small employers have business incentives to offer health coverage to their employees, and an otherwise eligible small employer would lose eligibility for certain tax benefits if it did not do so. *See* 26 U.S.C. § 45R.

Plaintiffs are likewise mistaken to assume that all or most grandfathered plans exclude contraceptive coverage. *See* Pl. Br. 55-56. The Institute of Medicine found that "[c]ontraceptive coverage has become standard practice for

-42-

most private insurance." IOM Report 108. In any event, the Affordable Care Act's grandfathering provision, 42 U.S.C. § 18011, does not have the effect of providing the type of permanent exemption from a coverage requirement that plaintiffs demand here. Although grandfathered plans are not subject to certain requirements, including the requirement to cover recommended preventive health services without cost sharing, the grandfathering provision is transitional in effect, and it is expected that a majority of plans will lose their grandfathered status by the end of 2013. *See* 75 Fed. Reg. 34,538, 34,552 (June 17, 2010).[14]

Changes to a group health plan such as the elimination of certain benefits, an increase in cost-sharing requirements, or a decrease in employer contributions can cause a plan to lose its grandfathered status. *See* 45 C.F.R. § 147.140(g). The Freshway Foods plan is not grandfathered because plaintiffs made the economic decision to increase the amounts that plan participants and beneficiaries must pay through cost-sharing. *See* App. 25 ¶ 36. Having made that economic decision,

_____

[14] Plaintiffs overstate the number of individuals covered under grandfathered plans. Their figures are drawn from the total number of individuals covered under health plans in existence at the start of 2010, and they disregard the fact that the number of grandfathered plans is steadily declining. *See*, *e.g.*, Kaiser Family Foundation and Health Research & Educational Trust, Employer Health Benefits 2012 Annual Survey at 7-8, 190, *available at* http://ehbs.kff.org/pdf/2012/8345.pdf (last visited February 23, 2013) (indicating that 58 percent of firms had at least one grandfathered health plan in 2012, down from 72 percent in 2011, and that 48 percent of covered workers were in grandfathered health plans in 2012, down from 56 percent in 2011).

plaintiffs cannot now contend that the Freshway Foods plan should be treated as if it were grandfathered.  The grandfathering provision is "a reasonable plan for instituting an incredibly complex health care law while balancing competing interests." *Legatus v. Sebelius*, __ F. Supp. 2d __, 2012 WL 5359630, *9 (Oct. 31, 2012), *appeal pending*, No. 13-1092 (6th Cir.).  "To find the Government's interests other than compelling only because of the grandfathering rule would perversely encourage Congress in the future to require immediate and draconian enforcement of all provisions of similar laws, without regard to pragmatic considerations, simply in order to preserve 'compelling interest' status." *Ibid*.

Plaintiffs also note that certain organizations qualify for a "religious employer" exemption from the contraceptive-coverage requirement.  *See* Pl. Br. 8. Clearly, the government can provide an exemption for non-profit, religious institutions such as churches and their integrated auxiliaries, *see* 45 C.F.R. § 147.130(a)(1)(iv)(B), and address religious objections raised by additional non-profit, religious organizations, *see* 78 Fed. Reg. 8456 (Feb. 6, 2013), without also extending such measures to for-profit, secular corporations.  *See*, *e.g.*, *Lee*, 455 U.S. at 260 (noting that "Congress granted an exemption" from social security taxes, "on religious grounds, to self-employed Amish and others").

Plaintiffs "see no difference between" the Freshway Foods corporations and a non-profit, religious organization.  *Korte v. HHS*, __ F. Supp. 2d __, 2012 WL

6553996, *8 (S.D. Ill. 2012), *appeal pending*, No. 12-3841 (7th Cir.).  As

discussed above, however, "[r]eligious accommodations in related areas of federal

law, such as the exemption for religious organizations under Title VII of the Civil

Rights Act of 1964, are available to nonprofit religious organizations but not to

for-profit secular organizations."  78 Fed. Reg. at 8461-62.  Consistent with this

longstanding federal law, the Departments proposed to make certain

accommodations for "nonprofit religious organizations, but not to include for-

profit secular organizations."  *Id*. at 8462.  "Using well established criteria to

determine eligibility for an exemption based on religious belief, such as the

nonsecular nature of the organization and its nonprofit status, the [Affordable Care

Act], through its implementing rules and regulations, both recognizes and protects

the exercise of religion."  *Hobby Lobby Stores*, 870 F. Supp. 2d at 1289.  "The fact

that the exceptions do not extend as far as plaintiffs would like does not make the

mandate nonneutral."  *Ibid*.

    The Supreme Court has made clear that the government "may encourage the

free exercise of religion by granting religious accommodations, even if not

required by the Free Exercise Clause, without running afoul of the Establishment

Clause."  *O'Brien*, 894 F. Supp. 2d 1163.  "'Such legislative accommodations

would be impossible as a practical matter'" if, as plaintiffs contend, the

government could not distinguish between religious organizations and secular

-45-

corporations.  *Id*. at 1164 (quoting *Catholic Charities of Sacramento, Inc. v. Superior Court*, 85 P.3d 67, 79 (Cal. 2004)).

**3.**  Plaintiffs alternatively contend that regulating the terms of group health plans is not the least restrictive means to accomplish the government's objectives. They assert that, instead, the government could "provide these services directly to citizens itself"; "provide incentives for pharmaceutical companies that manufacture contraceptives to provide such products to pharmacies, doctors' offices, and health clinics free of charge"; "allow citizens who pay to use contraceptives to submit receipts to the government for reimbursement"; or "offer tax deductions or credits for the purchase of contraceptive services."  Pl. Br. 61.

These proposals—which would require federal taxpayers to pay the cost of contraceptives for the employees of for-profit, secular companies—reflect a fundamental misunderstanding of RFRA and the "least restrictive means" test that it incorporates.  That test has never been interpreted to require the government to create or expand programs in order to "subsidize private religious practices." *Catholic Charities of Sacramento, Inc. v. Superior Court*, 85 P.3d 67, 94 (Cal. 2004) (rejecting challenge to a state-law requirement that certain health insurance policies cover prescription contraceptives).

**CONCLUSION**

The denial of a preliminary injunction should be affirmed.

Respectfully submitted,

STUART F. DELERY
  *Acting Assistant Attorney General*

RONALD C. MACHEN, JR.
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

 /s/ Alisa B. Klein
ALISA B. KLEIN
MARK B.STERN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

JUNE 2013

-47-

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R.

App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New

Roman, a proportionally spaced font.  I further certify that this brief complies with

the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains

10,781 words, excluding the parts of the brief exempted under Rule

32(a)(7)(B)(iii), according to the count of Microsoft Word.


 /s/ Alisa B. Klein
Alisa B. Klein

-48-

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2013, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Alisa B. Klein
Alisa B. Klein